## Embry, et al. v. Alford.

(Decided December 9, 1914.)

### Appeal from Ohio Circuit Court.

1. Land—Action to Try Title—In an action to try title to land it is error to submit to the jury the question of title.
2. Land—Possession—Boundaries.—Where one enters upon and takes possession of part of a tract of land embraced within the boundary described in his deed, his possession will extend to the whole of the boundary described therein.

C. E. SMITH, H. P. TAYLOR and BARNES & SMITH for appellants.

HEAVRIN & KIRK for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

This is an action for trespass to try title. The appellee instituted the action asserting title by possession to about 39 or 40 acres of land. It is claimed that in the division of his father's lands there was conveyed to him a tract of land formerly belonging to his father which should have embraced, but which, by oversight, did not embrace, the land in controversy; but that he and his father, and those under whom they claimed, had been in actual adverse possession of the tract of land in controversy for much longer than the statutory period, claiming to a well-marked and well-defined boundary.

The defendants answered, asserting title in themselves under a deed from James P. Alford, the remote grantor of the appellee, by which deed, as claimed by

them, he conveyed, in 1871, to one Embry a tract of land embracing the tract in controversy, and that said Embry entered upon said tract of land so conveyed, and he and those claiming under him had ever since had the actual adverse possession of the same.

The evidence showed that the parties were claiming under the same remote grantor, James P. Alford, and tended to show that, after the execution of the deed in 1871 by said Alford to Embry, the latter entered upon the land, enclosed a part of it, and that he and those claiming under him had ever since so occupied it. The land in controversy, however, is outlying woodland and only a small part of it has ever been actually enclosed.

The evidence also showed that the lands were contiguous to that part of appellee's father's lands which had been actually conveyed to him in the settlement of his father's estate, and that there was a well-defined and well-marked boundary line around that not embraced in his deed.

The evidence further shows that each of the parties had, at various times, cut and hauled timber from the disputed lands, but not without controversy.

The court, in its instructions, told the jury that if they believed from the evidence that the plaintiff was the owner of the tract of land described in his pleadings, they should find for him, and unless they so believed, they should find for the defendants; and then, in separate instructions, submitted the question of adverse possession, both as to the plantiff and the defendants, and finally instructed the jury that neither the plaintiff nor the defendants had any paper title going back to the Commonwealth.

It would seem useless to point out the defects in these instructions; in the first place, they left to the jury to determine, without restriction, the title to the land in controversy, and, in the next place, they did not submit what we conceive to be the only issues in the case.

The vital question in the case seems to be whether appellant's deed embraced the land in controversy; for if it did embrace it, and possession taken within the boundary in the deed, according to the uniform rulings of this court, the possession extended to the exterior lines called for in the deed. But, on the other hand, if it was not embraced in appellant's deed, and appellee and those under whom he claimed had been in actual adverse possession of it for the statutory period, claim-

ing to well-defined and well-marked boundary lines, the verdict should have been for him except as to that part actually enclosed by appellants. These are the vital issues and no others should have been submitted.

The judgment is reversed for further proceedings consistent herewith.